IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHRYN M. QUINN,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| v. | : | NO. 09-4327 |
| **MERCY FITZGERALD HOSPITAL,** | : | |
| **Defendant.** | : | |

**DuBOIS, J.**                                                                                                        **July 22, 2011**

**M E M O R A N D U M**

**I.  INTRODUCTION**

In this case, plaintiff Kathryn Quinn alleges that her former employer, Mercy Fitzgerald Hospital ("Mercy"), terminated her because her chronic back problems forced her to take leave from her job as a certified nursing assistant ("CNA").  Quinn asserts claims arising under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq.  Presently before the Court is Mercy's Motion for Summary Judgment.  For the reasons that follow, the Court grants the motion as to Quinn's claims arising under the ADA and PHRA and denies it as to her claim arising under the FMLA.

**II.  BACKGROUND**[1]

Mercy hired Quinn in September 2001 to work as a CNA.  (Def.'s and Pl.'s Statements of

---

[1] The facts are presented in the light most favorable to Quinn, the non-moving party.

Uncontested Material Facts (hereinafter "SUF") ¶ 1.)  About a year earlier, she had undergone back surgery for disc herniations suffered in a previous job.  (Id. ¶ 2.)  Mercy knew about the surgery when it hired Quinn.  (Id. ¶ 3.)

Even after the surgery, Quinn continued to have back problems.  Her physician, Dr. Matthew O'Donnell, testified as follows:

> My understanding was that her condition at times was not severe enough to interfere with working and normal activities of daily life, and then there would be times where her back pain would be so severe that she wasn't able to bend at the waist let alone pick up something more than five pounds. That's kind of standard for chronic back pain.

(O'Donnell Dep. at 85.)  In March 2007, Quinn requested leave under the FMLA because of her back problems.  That request was granted.  (SUF ¶¶ 15-16.)

In April 2008, Quinn missed four days of work because of lower back pain and conjunctivitis.  (Id. ¶ 30.)  During that time, she visited Dr. O'Donnell for treatment.  (Quinn Dep. at 201-03.)  Someone in Dr. O'Donnell's office gave Quinn a doctor's note dated April 23, 2008 that states that Quinn was suffering from "chronic LBP [lower back pain] with flare." (Def.'s Mot. for Summ. J., Ex. G.)  Before returning to work on April 25, 2008, Quinn added the words "w/ [with] conjunctivitis eye" underneath the "chronic LBP with flare" notation.  (Id., Ex. H; SUF ¶ 40.)  She added the note about conjunctivitis with permission from Dr. O'Donnell's office staff.  (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 2.)[2]  Quinn gave the altered note to Christine Chalmers, her supervisor.  (SUF ¶ 44.)

On June 6, 2008, Quinn attended a meeting with Chalmers and human relations director

---

[2] Quinn also acknowledged adding at least one date to the part of the note that specifies when Quinn was under Dr. O'Donnell's care.  (Quinn Dep. at 185.)

Vincent Arch. (SUF ¶ 50.) At the meeting, Arch informed Quinn that she was being terminated. (Quinn Dep. at 245.) While Chalmers was still in the room, Arch told Quinn that the termination was based on her alteration of the doctor's note. (Id. at 239.) At some point during the meeting, Chalmers left. At that point, according to Quinn, Arch informed her that her termination "really wasn't [because of] the doctor's note. It was FMLA. He said, you're – you're not going to hold this over our head." (Id. at 451.) According to Quinn, Arch also said she "was a liability to the hospital because of her disability and taking time off under the FMLA." (Pl.'s Interrog. Resps. ¶ 4.)

Quinn was officially terminated by letter from Arch dated June 16, 2008. (Def.'s Mot. for Summ. J., Ex. J.) In November 2008, she was hired by another hospital. (SUF ¶ 58.)

In the instant action, Quinn alleges a variety of claims arising under the FMLA, ADA and PHRA stemming from her employment with and termination by Mercy. Mercy has moved for summary judgment. Its motion is fully briefed and ripe for review.

**III.  LEGAL STANDARD**

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

**IV. DISCUSSION**

Plaintiff has withdrawn all claims under the ADA and PHRA, except a claim that she was terminated because of a perceived disability. As to all withdrawn claims, the Court grants Mercy's Motion for Summary Judgment.

That leaves Quinn with two claims: (1) a perceived disability discrimination claim under the ADA and PHRA and (2) a retaliation claim under the FMLA. For the following reasons, the Court grants Mercy's Motion for Summary Judgment as to the perceived disability discrimination claim but denies the motion as to the FMLA retaliation claim. The Court addresses each claim in turn.

A. <u>Perceived Disability Discrimination Claim</u>[3]

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "To make out a prima facie

---

[3] This section will analyze plaintiff's claim under only the ADA. The analysis applies equally to plaintiff's PHRA claim, however, because the two statutes are "interpreted coextensively." Castellani v. Bucks Cnty. Mun., 351 F. App'x 774, 777 (3d Cir. 2009).

case of disability discrimination under the ADA, [plaintiff] must establish that she (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006) (citations omitted).

The disability prong of this test is only satisfied where a plaintiff shows that: "(1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of such impairment; or (3) he was 'regarded as' having such an impairment by his employer." Maresca v. Blue Ridge Commc'ns, 363 F. App'x 882, 884 (3d Cir. 2010) (citation omitted). Plaintiff does not argue that she had a qualifying physical or mental impairment or that she has a record of such an impairment. Rather, she asserts that Arch's statement to her that she was a "liability to the hospital because of her disability" demonstrates that Mercy regarded her as disabled under the ADA. Plaintiff's argument is unavailing.

An employee is "regarded as" disabled for purposes of the ADA where the employer regards the employee as "suffering from an impairment within the meaning of the statute[], not just that the employer believe[s] the employee to be somehow disabled." Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 381 (3d Cir. 2002) (citations omitted). In other words, the employee must show either that the employer believed mistakenly that the employee had "a physical impairment that substantially limits one or more major life activities" or that the employer believed mistakenly that "an actual, nonlimiting impairment" of the employee imposed a substantial limitation on him. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). Further, "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." Murphy v. United Parcel Serv., Inc., 527

U.S. 516, 523 (1999).  Instead, the employer must regard the employee as "incapable of performing a wide range of jobs."  Rinehimer, 292 F.3d at 381 (citation omitted).[4]

The only record evidence to which Quinn points in support of her perceived disability discrimination claim is Arch's comment that she was a liability to the hospital "because of her disability."  Such a comment is insufficient to create a triable issue of fact as to whether Mercy perceived Quinn as disabled.  See Ross v. Kraft Foods N. Am., Inc., 347 F. Supp. 2d 200, 204 (E.D. Pa. 2004) (holding that statement from employee relations manager to employee that, "with your kind of disability you should not be working here," did not create triable issue as to whether employer regarded employee as disabled).  These sorts of "stray remarks" do not give rise to an inference that an employer believed the employee was incapable of performing a wide range of jobs.  Anderson v. Radio One, Inc., No. 09-194, 2010 WL 3719088, at *10 (E.D. Pa. Sept. 20, 2010); accord Parker v. Port Auth., 90 F. App'x 600, 603-04 (3d Cir. 2004).

Because plaintiff cannot prove she was regarded as disabled, she cannot establish a prima facie case of disability discrimination under the ADA or PHRA.  Defendant's Motion for Summary Judgment is granted as to plaintiff's perceived disability discrimination claim under those statutes.

---

[4] The Court notes that Congress has amended the ADA by enacting the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325 (2008), which broadened the definition of disability under the ADA.  Under the ADAAA, an individual is regarded as disabled "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A) (emphasis added).  However, the ADAAA did not take effect until January 1, 2009, several months after the conduct at issue in this case.  Although the Third Circuit has declined to address the question whether the ADAAA applies retroactively, it has noted that "every court of appeals decision of which we are aware has held that the amendments are not retroactive."  Colwell v. Rite Aid Corp., 602 F.3d 495, 501 n.5 (3d Cir. 2010) (collecting cases).  Thus, the Court applies the pre-ADAAA law set forth above.

B. FMLA Claim

The Court turns next to plaintiff's FMLA claim. The FMLA entitles eligible employees to twelve weeks of unpaid leave during any twelve-month period as a result of, inter alia, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

There are two types of claims an employee can bring against an employer under the FMLA: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive FMLA rights, and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the FMLA. See 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220. In this case, plaintiff appears to allege only a retaliation claim, asserting that she was terminated for taking FMLA leave.[5]

Retaliation claims under the FMLA are generally analyzed under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Sommer v. Vanguard Grp., 380 F. Supp. 2d 680, 687 (E.D. Pa. 2005). Under this framework, a plaintiff must first make out a prima facie case of retaliation. To make out a prima facie case, the plaintiff must show that (1) she availed herself of a protected right under the FMLA; (2) she suffered an adverse employment action; and (3) there was a causal connection between her protected activity

---

[5] In its motion, defendant assumes that plaintiff also asserts an interference claim and argues it is entitled to summary judgment on that "presumed" claim. (Def.'s Mot. for Summ. J. at 37 (emphasis omitted).) Even assuming, arguendo, that plaintiff were arguing that her retaliatory termination claim also encompassed an interference claim, that would not alter the Court's analysis because the two claims are essentially the same. See, e.g., Atchison v. Sears, 666 F. Supp. 2d 477, 489 (E.D. Pa. 2009) ("Atchison's interference claim is identical to his retaliation claim, and premised on the same allegation that Sears took adverse employment action against him because he requested FMLA leave. . . . Thus, Atchison's FMLA violation allegations should be analyzed as a retaliation claim.").

and the employer's adverse employment action.  Conoshenti v. Pub. Serv. Elec. & Gas. Co., 364 F.3d 135, 146 (3d Cir. 2004).

After a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer provides a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to establish that the employer's reason was pretext for retaliatory animus.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Notwithstanding this burden-shifting framework, at all times, the ultimate burden of persuasion remains with the plaintiff.  See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 799 n.10 (3d Cir. 2003); see also Burdine, 450 U.S. at 253.

However, the McDonnell Douglas framework is inapplicable where the plaintiff has adduced direct evidence of retaliation.  See Conoshenti, 364 F.3d at 147.  In such a circumstance, a court's analysis is guided by the Supreme Court's decision in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  Under Price Waterhouse, once a plaintiff brings forth direct evidence of retaliation for a protected activity, the burden shifts to the defendant to prove that it still would have terminated the plaintiff even without consideration of the FMLA leave.  Conoshenti, 364 F.3d at 147.  Direct evidence in this context means evidence that "demonstrates that the decisionmakers [of the defendant] placed substantial negative reliance on an illegitimate criterion in reaching their decision" to take a negative employment action against the plaintiff.  Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998) (citations and internal quotation marks omitted).

Defendant proffers two arguments as to why its Motion for Summary Judgment should be granted on plaintiff's FMLA retaliation claim.  First, defendant asserts that plaintiff's back

condition did not qualify her for FMLA leave, meaning she did not engage in a protected activity under the act and cannot make out a prima facie case of retaliation. Second, defendant argues that, under either a McDonnell Douglas or a Price Waterhouse analysis, plaintiff cannot prevail because the evidence shows she was fired because of the altered doctor's note. Neither argument passes muster.

1. *Serious Health Condition*

The FMLA requires an employer to provide leave for medical conditions only if they are "serious health condition[s]." 29 U.S.C. § 2612(a)(1)(C)-(D). The act defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The regulations in place at the time Quinn was employed by Mercy further clarify that definition.[6] Those regulations provide that a "serious health condition" includes a condition that leads to "[a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition." 29 C.F.R. § 825.114(a)(2)(iii) (2008). A "chronic serious health condition" is, in turn, defined as one that:

> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

---

[6] The regulations were subsequently amended, effective January 16, 2009. See The Family and Medical Leave Act of 1993, 73 Fed. Reg. 67934 (Nov. 17, 2008) (codified at 29 C.F.R. pt. 825).

Id.

Plaintiff has provided sufficient evidence to create a triable issue as to whether her back ailments constituted a "chronic serious health condition." Dr. O'Donnell evaluated plaintiff's back condition on at least three occasions, at least two of which occurred while plaintiff worked for defendant. (O'Donnell Dep. at 88-89.)[7] The condition also has extended over a period of years and caused episodic periods of incapacity. (Id. at 91 ("[Quinn] has a chronic back condition. . . . It's very common to have multiple flares with a condition like this.").)

Given this evidence, it would be inappropriate to conclude, as a matter of law, that plaintiff's back problems did not amount to a "serious health condition." See Victorelli v. Shadyside Hosp., 128 F.3d 184, 189 (3d Cir. 1997). A reasonable jury could conclude otherwise.

### 2. *Reasons for Termination*

The Court turns next to defendant's argument that no reasonable jury could conclude Quinn was terminated because of her FMLA leave. As an initial matter, it is clear that the Price Waterhouse framework applies in this case. Quinn has introduced direct evidence, in the form of Arch's comments, that her FMLA leave, and not the alteration of the doctor's note was the reason for her termination. (Quinn Dep. at 448-49 ("[Arch] told me why I was being let go. It really wasn't the doctor's note. It was FMLA.").) This evidence is paradigmatic of the kind that, if believed, justifies shifting to defendant the burden of persuasion. Cf. Price Waterhouse, 490 U.S. at 272-73 (O'Connor, J., concurring) ("It is as if [plaintiff] were sitting in the hall outside the room where partnership decisions were being made. . . . As the decisionmakers exited the

---

[7] Contrary to defendant's assertions, plaintiff's visits to Dr. O'Donnell could constitute treatment, since they appear to have involved "evaluations of the condition." 29 C.F.R. § 825.114(b) (2008).

room, she was told by one of those privy to the decisionmaking process that her gender was a major reason for the rejection of her partnership bid.").

Defendant contends that, even under Price Waterhouse, it is entitled to summary judgment because it would have terminated Quinn regardless of her FMLA leave because she altered a medical record. Given Arch's comments, however, the Court is not in a position to make that determination at this time. Reading the facts in the light most favorable to plaintiff, Arch essentially told plaintiff that Mercy was using Quinn's alteration of the doctor's note as a pretext to fire her for taking FMLA leave. If a jury believed Arch made that statement, it could reasonably conclude that Mercy would not have fired Quinn absent her FMLA leave.

In sum, disputed issues of material fact, including what Arch said and what he meant by his statements, preclude the Court from granting Mercy's Motion for Summary Judgment on plaintiff's FMLA claim. Accordingly, Mercy's motion is denied as to that claim.

## V. CONCLUSION

For the foregoing reasons, Mercy's Motion for Summary Judgment is granted as to Quinn's claims arising under the ADA and PHRA and denied as to her retaliation claim arising under the FMLA. An appropriate order follows.